**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| FRANK'S ELECTRICAL SERVICE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-00145-DRH-PMF |
| | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION, D/B/A LIGHTOLIER | ) | |
| and LIGHTOLIER CONTROLS. | ) | |
| | ) | *JURY TRIAL DEMANDED* |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

---

## COMPLAINT

Relator, Frank's Electrical Service ("Relator"), by and through its undersigned attorneys, for its Complaint against Defendant Philips Electronics North America, D/B/A Lightolier and Lightolier Controls ("defendant"), alleges as follows:

### NATURE OF THE CASE

1.     This is a qui tam action for false patent marking under 35 U.S.C. § 292.

2.     As set forth in detail below, defendant has violated 35 U.S.C. § 292(a) by falsely marking articles with expired patents for the purpose of deceiving its competitors and the public into believing that such articles are covered by the falsely marked patents.

### PARTIES, JURISDICTION AND VENUE

3.     Relator Frank's Electrical Service is an Illinois sole proprietorship located at 521 Lawton Street, Alton, Illinois, in the Southern District of Illinois, and is lawfully engaged in the business of contracting for electrical services.

1

4.      In the ordinary course of its business, for at least the last five years, Relator has purchased defendant's falsely marked products from vendors in this district, and has used such products for jobs performed in this district.

5.      Upon information and belief, Philips Electronics North America Corporation ("Philips") is a corporation organized and existing under the laws of Delaware, having its principal place of business at 3000 Minuteman Road, Andover, Massachusetts.

6.      This Court has personal jurisdiction over Philips because, upon information and belief, Philips, at least through its Lightolier and Lightolier Controls divisions, has marketed, advertised and sold, and continues to market, advertise and sell falsely marked products (as described in greater detail below) in Illinois and in this District and/or in the stream of commerce with knowledge that they would be sold and used in Illinois and in this District.

7.      Further, and upon information and belief, Philips through its Lightolier and Lightolier Controls divisions transacts substantial business in Illinois, including advertising, marketing and selling to consumers located throughout Illinois, including the Southern District of Illinois.

8.      Upon information and belief, Lightolier is a division of Philips having its principal place of business at 631 Airport Road, Fall River, Massachusetts.

9.      Lightolier has marketed, advertised and sold, and continues to market, advertise and sell falsely marked products (as described in greater detail below) in Illinois and in this District and/or in the stream of commerce with knowledge that they would be sold and used in Illinois and in this  District.

10.      Upon information and belief, Lightolier Controls is a division of Philips having its principal place of business at 10911 Petal Street, Dallas, Texas.

2

11.     Lightolier Controls has marketed, advertised and sold, and continues to market, advertise and sell falsely marked products (as described in greater detail below) in Illinois and in this District and/or in the stream of commerce with knowledge that they would be sold and used in Illinois and in this  District.

12.     Jurisdiction over Philips in this district is also proper because it has specifically violated 35 U.S.C. § 292 within this District, and these actions have directly given rise to this cause of action.

13.     For example, Philips through its Lightolier and Lightolier Controls divisions, sells and advertises, and continues to sell and advertise falsely marked products to the residents of Illinois through at least its www.lightolier.com and www.lolcontrols.com Web sites.

14.     In particular, www.lightolier.com/home/file-finder.jsp, provides links for a number of specifications for Lightolier, Lightolier Controls and/or Philips products.

15.     Several hundred of the products on these Web pages, as described in greater detail below, are marked with at least one expired patent.

16.     As described in Paragraphs 13-15 above (and in greater detail below), a user interacting with these Web sites can download product information, brochures and specifications which include false patent markings thereupon for all products at issue in this suit directly from Philips and/or its Lightolier and Lightolier Controls divisions.  Thus, a user from the Southern District of Illinois can interact with defendant's Web sites www.lightolier.com and www.lolcontrols.com and directly receive falsely marked materials from Philips and/or its divisions.

17.     The Lightolier Web site is also highly interactive, allowing "Distributors" and "Sales Representatives," including those from the Southern District of Illinois, to "Log in," provided they have a "User ID" and "Password."

18.     This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this district or because the defendant and its divisions are currently subject to personal jurisdiction in this district.

## DEFENDANT AND ITS FALSELY MARKED PRODUCTS

20.     Defendant makes, sells, or has made and has sold, a variety of products for sale to distributors, retailers, and the general consuming public.

21.     Defendant marks the products, product inserts, specifications, brochures and/or packaging of the products recited in Paragraph 20 with at least one expired patent number.

22.     Some of the products are marked with patents that expired decades ago.  For example, and as described in greater detail below in Count I, defendant marks at least 37 products with U.S. Patent No. 2,184,149 ("the '149 patent").  The '149 patent expired prior to the 1960s, and therefore has been expired for over 50 years.

23.     Despite this, at least 37 products are marked with the '149 patent, and the specifications for such products, marked with the '149 patent, are currently available for download from defendant's Web site.

24.     Other defendant products are still marked with at least one of U.S. Patent Nos. 2,977,566 ("the '566 patent"); 3,246,074 ("the '074 patent"); 3,286,052 ("the '052 patent"),

3,295,093 ("the '094 patent"); 3,496,518 ("the '518 patent"); 3,840,735 ("the '735 patent");

3,894,781 ("the '781 patent"), 4,039,822 ("the '822 patent") and 4,096,349 ("the '349 patent").

These patents expired starting in 1978 (over 22 years ago) until 1997 (14 years ago).

25.     For example, and as described in greater detail in Count II below, the

specification for Lytetrim Miniature Track Lighting product number 8371 is marked with the

'566, '074, '052 and '093 patents.  As of the time of filing of this complaint, this document was

still available for download from defendant's Web site at:

http://www.lightolier.com/MKACatpdfs/8371.PDF.  Ex. 1.

26.     The patents marked on this product expired in 1978, 1983, 1983 and 1983

(respectively).

27.     This document (and likely the product itself), however, was created in 2002,

almost 20 years after the expiration of all of the patents marked thereon.

28.     Despite the patents from Paragraphs 22 and 24 being expired for many years,

Philips and/or its Lightolier and Lightolier Controls divisions are still currently marking

products, product inserts, specifications, brochures and/or packaging with these patent numbers

(at a minimum, by allowing users to download these specifications from its Web site).

29.     A large number of the patents at issue in this action were owned by a company

named Genlyte, which Philips purchased on or about 2007.

30.     Over 20 of these Genlyte patents expired prior to Philips' acquisition of Genlyte.

31.     Because these patents expired prior to Philips' purchase of Genlyte, Philips never

owned these patents.

32.     Despite this, Philips marked and continues to mark its products with over 20

patents it never owned, including new products developed after Philips acquisition of Genlyte.

33.     Further, certain products, product inserts, specifications, brochures and/or packaging of the products recited in this Complaint were created and/or copyrighted after the patents expired, and yet were still marked with expired patent numbers.

34.     For example, Exhibit 2 is product brochure for the "lyteswitch" product line.

35.     Upon information and belief, this product brochure for the "lyteswitch" product line was created in 2008. [1]

36.     As of the time of this complaint, this brochure is still available for download from Lightolier Control's Web site at

http://www.lolcontrols.com/clientuploads/techdocs/Lyteswitch_Brochure_0708.pdf.

37.     The "lyteswitch" brochure is marked with U.S. Patent Nos. 4,413,211 ("the '211 patent"); 4,430,576 ("the '576 patent"); 4,465,956 ("the '956 patent"); 4,733,138 ("the '138 patent"); 4,792,731 ("the '731 patent"); 4,880,950 ("the '950 patent"); 4,988,840 ("the '840 patent"); 4,992,709 ("the '709 patent"); 5,128,654 ("the '654 patent"); 5,189,259 ("the '259 patent"); D307,578 ("the '578 patent"), D333,124 ("the '124 patent") and 5,004,969 ("the '969 patent").  Ex. 2.

38.     These patents, however, are expired, and some have been expired for nearly 10 years.

39.     Nine of the patents listed on the "lyteswitch" brochure (the '211 patent, the '576 patent, the '956 patent, the '138 patent, the '731 patent, the '950 patent, the'840 patent, the '578 patent and the '124 patent) expired *prior* to the July 2008 creation date for this brochure.

---

[1] This document was saved onto the lolcontrols Web site on July 11, 2008, indicating this document was created on or about this date.  See Ex. 3, directory downloaded from Lightolier Controls' Web site at http://lolcontrols.com/clientuploads/techdocs/.

40.     Defendant therefore created this product brochure after the patents expired, and nonetheless marked the brochure with expired patents.

41.     Upon information and belief, and according to records from the United States Patent and Trademark Office, the "lyteswitch" product line was not available for sale to the public until at least February 2008.  Ex. 4 (See, p. 2, "First Use In Commerce Date" of February, 2008).

42.     At least seven of the patents marked on this brochure expired *prior* to the creation even of the "lyteswitch" product line (the '211 patent, the '576 patent, the '956 patent, the '138 patent, the '731 patent, the '950, and the '578 patent and the '124 patent).

43.     Two more of the patents (the '950 patent, the'840 patent) also appear to have expired prior to the launch date of the "lyteswitch" product line.

44.     The "lyteswitch" brochure is a particularly egregious example of false marking, because it contains a warning that if anyone violates the patents listed on it (including the 14 currently expired patents), Philips and/or its divisions would bring suit against them.

45.     In more detail, just above the list of patents, which includes the 14 currently expired patents, is the following language:

© 2008 Philips Group. All rights reserved. Certain products illustrated in this catalog are protected by applicable patents and patents pending. Lightolier Controls will aggressively defend all of its intellectual property. We reserve the right to change details of design, materials and finishes.

Ex. 2

7

46.     Of import here, is the statement that Philips and/or its Lightolier Controls division will "**aggressively defend all of its intellectual property**." (emphasis added).  Ex. 2.

47.     The implication of this warning is clear – if anyone violates the patents listed directly below this statement, Philips and/or its Lightolier Controls division will bring a patent infringement suit against them on those patents.

48.     Philips and/or its Lightolier Controls division included this statement with the intent of deterring competition by making its competitors and/or the general public believe that the below listed patents are enforceable, when, in fact, fifteen of them are expired (meaning defendant could not bring suit on them against anyone).

49.     Defendant's "**aggressively defend all of its intellectual property**" language is not limited to the Lyteswitch product brochure, but appears in numerous other defendant product brochures including, but not limited to, the Intellisight, Lytemode DMX and Multiset Pro product lines (and all products listed within these brochures).  See Group Exhibit 5, Exhibits 6 and 7 respectively (downloaded from Lightolier Control's Web site at http://lolcontrols.com/clientuploads/techdocs/27723A_IntelliSight.pdf , http://lolcontrols.com/clientuploads/techdocs/27727.pdf and http://lolcontrols.com/clientuploads/techdocs/MultiSet_Pro_Brochure.pdf , respectively.

50.     Knowledge of the expired patents, and intent to deceive the public and/or competitors is also apparent in view of Philips' purchase of Genlyte (and Genlyte's Lightolier and Lightolier Controls divisions) in 2007.

51.     Philips performed due diligence of Genlyte (and its divisions Lightolier and Lightolier Controls) prior to its acquisition.  Ex. 8 at 18.

8

52.     Upon information and belief, this would have included the determination of the assets of Genlyte, which necessarily would have included Genlyte's patents.

53.     Upon information and belief, Philips was thus aware in 2007 of which Genlyte patents were expired, and which were not.

54.     In addition, Philips annually tracks and evaluates the useful lives of its patents, including the acquisition-date fair value of the patents it acquires.

55.     For example, in its 2010 Annual Report, Philips makes the following statement regarding intangible assets:

> Acquired definite-lived intangible assets are amortized using the straight-line method over their estimated useful life.  The useful lives are evaluated every year. Patents and trademarks with a definite useful life [sic] acquired from third parties either separately or as part of the business combination are capitalized at cost and amortized over their remaining useful lives.  Intangible assets acquired as part of a business combination are capitalized at their acquisition-date fair value.

Ex. 9.

56.     Despite this, Philips created the 2008 label for at least the "lyteswitch" product line which listed patents that Philips knew were expired, along with the warning (from paragraph 41 above) that stated anyone infringing these patents would be sued.

57.     In view of at least the above non-limiting example, defendant knowingly marked product labels with expired patents intending to deceive the public and its competitors into believing such products were protected by patents when in fact they were not.

58.     Defendant has in the past knowingly marked or caused to be marked, and continue to mark or cause to be marked, articles with at least one expired patent with intent to deceive the public and its competitors into believing such products were protected by patents when in fact they were not.

9

59.     Each false marking on defendant's products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

60.     By falsely marking its products with patents that have expired, defendant has benefitted commercially and financially, and has limited competition against such products.

61.     Defendant is a sophisticated business entity with extensive experience in the procurement, acquisition, and litigation of patents in the United States.

62.     Because of the nature of its business, defendant actively seeks and maintains a number of patents.

63.     Upon information and belief, defendant has an in-house legal department which is responsible for defendant's intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

64.     As a sophisticated business entity, defendant knows the requirements and provisions of 35 U.S.C. §292.

65.     Upon information and belief, Philips has been involved in at least one action under 35 U.S.C. §292 (although not for the products discussed in this complaint).

66.     Despite Philips' knowledge that the marking of expired patents on products causes harm (which is why the statute was enacted), Philips intentionally continues to falsely mark products and to not rectify the situation globally across its company.

67.     Thus, by marking and continuing to mark articles with expired patent numbers without a reasonable belief that such articles were covered by the patents, defendant has injured the sovereign interests of the United States as well as the public interest of at least defendant's

10

customers who purchased such products, and have discouraged competition and innovation in competing products.

## THE EXPIRED PATENTS

68.     U.S. Patent No. 2,184,149 ("the '149 patent"), entitled, "Fishing Reel," was filed on March 7, 1938.  A true and correct copy of this patent is attached as Exhibit 10 to this complaint.

69.     The '149 patent expired no later than 1958.

70.     The '566 patent, entitled "Lighting Assembly," was filed on June 14, 1957.   A true and correct copy of this patent is attached as Exhibit 11 to this complaint.

71.     The '566 patent expired no later than March 28, 1978.

72.     The '074 patent, entitled, "Recessed Mount for Electric Power Distribution Track," was filed on August 12, 1963.  A true and correct copy of this patent is attached as Exhibit 12 to this complaint.

73.     The '074 patent expired no later than April 12, 1983.

74.     The '052 patent, entitled, "Connector Plug for Power Distribution Track," was filed on June 17, 1963.  A true and correct copy of this patent is attached as Exhibit 13 to this complaint.

75.     The '052 patent expired no later than November 15, 1983.

76.     The '093 patent, entitled, "Electric Power Distribution Conduit Accessible for Connection Thereto Along Substantially its Entire Length," was filed on May 21, 1963. A true and correct copy of this patent is attached as Exhibit 14 to this complaint.

77.     The '093 patent expired no later than May 21, 1983.

11

78.     The '518 patent, entitled, "Electrical Power Distribution Systems," was filed on March 15, 1968.  A true and correct copy of this patent is attached as Exhibit 15 to this complaint.

79.     The '518 patent expired no later than March 15, 1988.

80.     The '735 patent, entitled, "Vandal Resistant and Weatherproof Lighting Fixture," was filed on August 6, 1973 and issued on October 8, 1974. A true and correct copy of this patent is attached as Exhibit 16 to this complaint.

81.     The '735 patent expired no later than August 6, 1994.

82.     The '781 patent, entitled, "Connector Plug for Power Distribution Track," was filed on June 26, 1974 and issued on July 15, 1975. A true and correct copy of this patent is attached as Exhibit 17 to this complaint.

83.     The '781 patent expired no later than June 26, 1994.

84.     The '822 patent, entitled, "Circular Recessed Lighting Fixture," was filed on May 5, 1976 and issued on August 2, 1977.  A true and correct copy of this patent is attached as Exhibit 18 to this complaint.

85.     The '822 patent expired no later than May 5, 1996.

86.     The '349 patent, entitled, "Flexible Connector for Track Lighting Systems," was filed on April 4, 1977 and issued on June 20, 1978. A true and correct copy of this patent is attached as Exhibit 19 to this complaint.

87.     The '349 patent expired no later than April 4, 1997.

88.     U.S. Patent No. 4,194,858 ("the '858 patent"), entitled, "Mine Roof Bolt Anchor Installation," was filed on September 25, 1978 and issued on March 25, 1980. A true and correct copy of this patent is attached as Exhibit 20 to this complaint.

12

89.     The '858 patent expired no later than September 25, 1998.

90.     U.S. Patent No. 4,313,154 ("the '154 patent"), entitled, "Lighting Fixture with Uniform Mounting Frame for New Installations," was filed on May 8, 1980 and issued on January 26, 1982.  A true and correct copy of this patent is attached as Exhibit 21 to this complaint.

91.     The '154 patent expired no later than May 8, 2000.

92.     U.S. Patent No. 4,327,403 ("the '403 patent"), entitled, "Lighting Fixture with Uniform Mounting Frame for Old Installations," was filed on May 8, 1980 and issued on April 27, 1982. A true and correct copy of this patent is attached as Exhibit 22 to this complaint.

93.     The '403 patent expired no later than May 8, 2000.

94.     The '211 patent, entitled, "Control Circuit for Electrical Appliances," was filed on December 23, 1981 and issued on November 1, 1983. A true and correct copy of this patent is attached as Exhibit 23 to this complaint.

95.     The '211 patent expired no later than December 23, 2001.

96.     The '576 patent, entitled, "Remote Load Selector Circuit and Method," was filed on November 5, 1981 and issued on February 7, 1984. A true and correct copy of this patent is attached as Exhibit 24 to this complaint.

97.     The '576 patent expired no later than November 5, 2001.

98.     The '956 patent, entitled, "Control Circuit for Switching Dual Function Electrical Appliances," was filed on February 25, 1983 and issued on August 14, 1984. A true and correct copy of this patent is attached as Exhibit 25 to this complaint.

99.     The '956 patent expired no later than February 25, 2003.

13

100.     U.S. Patent No. 4,482,844 ("the '844 patent"), entitled, "Lamp Dimmer," was filed on February 7, 1983 and issued on November 13, 1984. A true and correct copy of this patent is attached as Exhibit 26 to this complaint.

101.     The '844 patent expired no later than February 7, 2003.

102.     U.S. Patent No. 4,649,323 ("the '323 patent"), entitled, "Microcomputer-Controlled Light Switch," was filed on April 17, 1985 and issued on March 10, 1987. A true and correct copy of this patent is attached as Exhibit 27 to this complaint.

103.     The '323 patent expired no later than April 17, 2005.

104.     U.S. Patent No. 4,717,773  ("the '773 patent"), entitled, "Silicate Esters and Organosilicon Compounds," was filed on October 4, 1985 and issued on January 5, 1988. A true and correct copy of this patent is attached as Exhibit 28 to this complaint.

105.     The '773 patent expired no later than October 4, 2005.

106.     U.S. Patent No. 4,717,993 ("the '993 patent"), entitled, "Aligning Joining Mechanism for Luminaires," was filed on May 5, 1987 and issued on January 5, 1988. A true and correct copy of this patent is attached as Exhibit 29 to this complaint.

107.     The '993 patent expired no later than May 5, 2007.

108.     The '138 patent, entitled, "Programmable Multicircuit Wall-Mounted Controller," was filed on December 4, 1986 and issued on March 22, 1988. A true and correct copy of this patent is attached as Exhibit 30 to this complaint.

109.     The '138 patent expired no later than December 5, 2005.

110.     U.S. Patent No. 4,751,624, entitled, "Safety Ceiling Fixture with Heat Sensor," was filed on December 14, 1987 and issued on June 14, 1988. A true and correct copy of this patent is attached as Exhibit 31 to this complaint.

111.    The '624 patent expired no later than December 14, 2007.

112.    The '731 patent, entitled, "Multi-Room Controlled For Individual Light Controls," was filed on March 16, 1987 and issued on December 20, 1988. A true and correct copy of this patent is attached as Exhibit 32 to this complaint.

113.    The '731 patent expired no later than March 16, 2007.

114.    U.S. Patent No. 4,871,893, entitled, "Slide Control Switch," was filed on July 29, 1988 and issued on October 3, 1989. A true and correct copy of this patent is attached as Exhibit 33 to this complaint.

115.    The '893 patent expired no later than July 29, 2008.

116.    The '950 patent, entitled, "Control Switch," was filed on February 23, 1988 and issued on November 14, 1989. A true and correct copy of this patent is attached as Exhibit 34 to this complaint.

117.    The '950 patent expired no later than February 23, 2008.

118.    The '709 patent, entitled, "Switching Circuit Providing Adjustable Capacitive Series Voltage Dropping Circuit With A Fractional Horsepower Motor," was filed on June 20, 1989 and issued on February 12, 1991. A true and correct copy of this patent is attached as Exhibit 35 to this complaint.

119.    The '709 patent expired no later than June 20, 2009.

120.    The '840 patent, entitled, "Control Switch," was filed on November 13, 1989 and issued on January 29, 1991. A true and correct copy of this patent is attached as Exhibit 36 to this complaint.

121.    The '840 patent expired no later than February 23, 2008.

15

122.   The '969 patent, entitled, "Phase Control Switching Circuit Without Zero Crossing Detection," was filed on October 16, 1989 and issued on April 2, 1991. A true and correct copy of this patent is attached as Exhibit 37 to this complaint.

123.   The '969 patent expired no later than October 16, 2009.

124.   U.S. Patent No. 5,031,084 ("the '084 patent"), entitled, "Universal Remodeler Frame-in Kit," was filed on January 3, 1990 and issued on July 9, 1991. A true and correct copy of this patent is attached as Exhibit 38 to this complaint.

125.   The '084 patent expired no later than January 3, 2010.

126.   U.S. Patent No. 5,045,985 ("the '985 patent"), entitled, "Self Locking Adjustable Mounting Bars," was filed on March 15, 1990 and issued on September 3, 1991. A true and correct copy of this patent is attached as Exhibit 39 to this complaint.

127.   The '985 patent expired no later than March 15, 2010.

128.   U.S. Patent No. 5,038,254 ("the '254 patent"), entitled, "Integrated Medical Light System," was filed on December 18, 1990 and issued on August 6, 1991. A true and correct copy of this patent is attached as Exhibit 40 to this complaint.

129.   The '254 patent expired no later than December 18, 2010.

130.   U.S. Patent No. 5,072,344 ("the '344 patent"), entitled, "Lighting Fixture Clamp," was filed on June 6, 1990 and issued on December 10, 1991. A true and correct copy of this patent is attached as Exhibit 41 to this complaint.

131.   The '344 patent expired no later than June 6, 2010.

132.   The '654 patent, entitled, "Preset Light Controller Including Infrared Sensor Operable in Multiple Modes," was filed on February 23, 1990 and issued on July 7, 1992. A true and correct copy of this patent is attached as Exhibit 42 to this complaint.

16

133.    The '654 patent expired no later than February 23, 2010.

134.    The '259 patent, entitled, "Face Plate Having Press-Fit Attachment to Electrical Switches, Outlets and the Like," was filed on May 17, 1990 and issued on February 23, 1993. A true and correct copy of this patent is attached as Exhibit 43 to this complaint.

135.    The '259 patent expired no later than May 17, 2010.

136.    The '578 patent, entitled, "Combined Escutcheon and Power Switch," was filed on February 4, 1988 and issued on May 1, 1990. A true and correct copy of this patent is attached as Exhibit 44 to this complaint.

137.    The '578 patent expired no later than May 1, 2004.

138.    The '124 patent entitled, "Control Switch," was filed on August 1, 1991 and issued on February 9, 1993. A true and correct copy of this patent is attached as Exhibit 45 to this complaint.

139.    The '124 patent expired no later than February 9, 2007.

## COUNT I

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH '149 PATENT

140.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-139 of this Complaint.

141.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '149 patent.

142.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 310MRE, 303MRE, 304PX, 304X, 305X, 308X, 309X, 313X, 315X, 316X, 317X, 322X, 325X, 330X, 341X, 343X, 344AX, 344DX, 346WX, 347AX,

348X, 363X, 371X, 372X, 373X, 374X, 375X, 376X, 377X, 384X, 385X, 401MRE, 409X, 413X, 463X, 464X and 471X.

143.    Images of the current specifications of these products[2] (as verified through Defendant's Web site) are attached hereto as Group Exhibit 46 to this Complaint.

144.    More than half of the specifications for these products were copyrighted in 2009 by "Philips Group", showing that Philips created these specifications and products long after the '149 patent expired (the '149 patent expired over 50 years ago).

145.    Defendant was aware that the '149 patent was expired when it designed and/or utilized those specifications and products.

146.    The instances of false marking shown in Group Exhibit 46 are representative and not exhaustive.

147.    Defendant knew that the articles it marked and continues to mark with the '149 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

148.    Additionally, given that the '149 patent expired over 50 years ago, defendant could not have had a reasonable belief in marking products with the '149 patent, especially when all of the marked products were created well after the '149 patent expired.

---

[2] In the interest of brevity, Plaintiff has provided as Exhibits to this Complaint only the product specification pages necessary to show the product and any expired and/or false patent number(s) marked thereon.  Plaintiff can provide complete product specifications upon request.

## COUNT II

## FALSE PATENT MARKING OF PRODUCT WITH THE '566, '074, '052 AND '093 PATENTS

149.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-148 of this Complaint.

150.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '566, '074, '052 and '093 patents.

151.    Such products include, but are not limited to, the Lytetrim Miniature Track Lighting product number 8371.

152.    Images of the current specification of this product (as verified through Defendant's Web site) is attached hereto as Exhibit 1 to this Complaint.

153.    The specification for this products was copyrighted in 2002, showing that this specification (if not product itself) was created more than 18 years after these patents expired.

154.    Defendant was aware that the '566, '074, '052 and '093 patents were expired when it designed and/or utilized those specifications and products.

155.    The instances of false marking shown in Exhibit 1 are representative and not exhaustive.

156.    Defendant knew that the articles it marked and continues to mark with the '566, '074, '052 and '093 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

19

## COUNT III

## FALSE PATENT MARKING OF LYTESWITCH PRODUCTS PATENTS

157.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-156 of this Complaint.

158.   Defendant makes, sells, or has made and has sold, a series of products that it markets under the "lyteswitch" brand.

159.   This brand includes, but is not limited to, the LSW-12-PRO, LSW-24-PRO, LSW-36-PRO, LSW-48-PRO, LSW-24-PROB, LSW-36-PROB, LSW-42-PROB, LSWETHER, LSWUL924, LSWPRORLY, LSWPRO2RLY, LSWBMI, LSW2BCDS, LSW3BCDS, LSW4BCDS, LSW6BCDS, LSW7BCDS, LSW8BCDS, LSW2BCDW, LSW3BCDW, LSW4BCDW, LSW6BCDW, LSW7BCDW, LSW8BCDW, ITSCS, ITSCSHB, ITSPCS, LSWOPC, ITSIR1, LSWBOX-1, LSWBOX-2, LSWBOX-3 and LSWBOX-4.

160.   Images of the product brochure and current specifications of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 2 and Group Exhibit 47 to this Complaint.

161.   The brochure for these products as well as the specifications are marked with the '211, '576, '956, '138, '731, '950, '840, '709, '654, '259, '578, '124 and '969 patents.

162.   While these patents are all expired (some as early as 2001), defendant still marks its products with these patents (including, allowing the specifications to still be downloaded from defendant's Web sites).

163.   The brochure and specifications (and likely products) were created during or after 2008, and thus, the '211 patent, the '576 patent, the '956 patent, the '138 patent, the '731 patent, the '950, and the '578 patent and the '124 patent expired prior to the creation of these materials.

164.    Defendant was aware that these patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked brochures and specifications).

165.    The instances of false marking shown in Exhibit 2 and Group Exhibit 47 are representative and not exhaustive.

166.    As discussed in Paragraphs 44-48 above, defendant marked these materials with an express warning that if anyone violated any of the patents (including expired patents) marked on the brochure or specifications, that defendant would bring suit against them.

167.    The sole reason for such a warning is to deceive others into believing those expired patents were in fact not expired.

168.    Defendant knew that the articles it marked and continues to mark with the '211, '576, '956, '138, '731, '950, '840, '709, '969, '654, '259, '578, '124 and '969 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT IV

## FALSE PATENT MARKING OF LYTESPAN TRACK LIGHTING SYSTEM PRODUCTS WITH THE '518 AND '781 PATENTS

169.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-168 of this Complaint.

170.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with both the '518 and '781 patents.

21

171.    Such products include, but are not limited to, Lytespan Track Lighting System product numbers 6320 and 7599.

172.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 48 to this Complaint.

173.    The specifications for these products were copyrighted in 2008 and 2009, showing that these specifications (and likely products) were created more than 10 years after both the '518 and '781 patents expired.

174.    Defendant was aware that the '518 and '781 patents were expired when it designed and/or utilized those specifications and products.

175.    The instances of false marking shown in Group Exhibit 48 are representative and not exhaustive.

176.    Defendant knew that the articles it marked and continues to mark with the '518 and '781 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

177.    Additionally, given that the '518 patent expired over 10 years ago, defendant could not have had a reasonable belief in marking products with the '518 patent, especially when a number (if not all) of the marked products were created after the '518 patent expired.

## COUNT V

## FALSE PATENT MARKING OF DECORATIVE OPALEX DIFFUSED LIGHT PRODUCTS WITH '735 PATENT

178.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-177 of this Complaint.

179.    Defendant makes, sells, or has made and has sold, at least one product which it marks or causes to be marked with the '735 patent.

180.    This product includes, but is not limited to, the Decorative Opalex Diffused Light product number 6776.

181.    Images of the current specification of this product (as verified through Defendant's Web site) is attached hereto as Exhibit 49 to this Complaint.

182.    The specifications for these products were copyrighted 2002, showing that this specification (and likely product) was created eight years after the '735 patent expired.

183.    Defendant was aware that the '735 patent was expired when it designed and/or utilized this specification and product.

184.    The instance of false marking shown in Exhibit 49 is representative and not exhaustive.

185.    Defendant knew that the articles it marked and continues to mark with the '735 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT VI

## FALSE PATENT MARKING OF CALCULITE RECESSED PRODUCTS WITH THE '822 PATENT

186.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-185 of this Complaint.

187.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '822 patent.

188.    Such products include, but are not limited to, the Calculite Recessed series product numbers 7037/31128, 7037/31118 and 7036/31124.

189.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 50 to this Complaint.

190.    The specifications for these products were copyrighted between 2002-2003, showing that these specifications (and likely products) were created more than 5 years after the '822 patent expired.

191.    Defendant was aware that the '822 patent was expired when it designed and/or utilized those specifications and products.

192.    The instances of false marking shown in Group Exhibit 50 are representative and not exhaustive.

193.    Defendant knew that the articles it marked and continues to mark with the '822 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

24

## COUNT VII

## FALSE PATENT MARKING OF THE ADVENT LYTESPAN 1 AND 2 CIRCUIT TRACK PRODUCTS WITH THE '349 PATENT

194.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-193 of this Complaint.

195.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '349 patent.

196.    Such products include, but are not limited to, the Advent Lytespan 1 and 2 Circuit Track series product numbers 61XMCE, 6101, 6060NAL, 6060WH, 6060BK, 6061NAL, 6061WH, 6061BK, 6096WH, 6096BK, 6101NAL, 6101NWH, 6101NBK, 6102NAL, 6102NWH, 6102NBK, 6103, NAL, 6103NWH, 6103NBK, 6104NAL, 6104NWH, 6104NBK, 6108NAL, 6108NWH, 6108NBK, 6112NAL, 6112NWH, 6112NBK, 6146NAL, 6146NWH, 6146NBK, 6148NAL, 6148NBK, 6148NWH, 6149NAL, 6149NWH, 6149NBK, 6150NAL, 6150NWH, 6150NBK, 6151NAL, 6151NWH, 6151NBK, 6152NAL, 6152NWH, 6152NBK, 6153NAL, 6153NWH, 6153NBK, 6154NBK, 6154NAL, 6154NWH, 7480, 7480AL, 7481, 7582, 7582AL, 7584, 7584AL, 7681AL, 7681 and 7683.

197.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 51 to this Complaint.

198.    The specifications for these products were copyrighted in 2009, showing that these specifications (if not products also) were created more than 10 years after the '349 patent expired.  Ex. 6

199.    Defendant was aware that the '349 patent was expired when it designed and/or utilized those specifications and products.

200.    The instances of false marking shown in Group Exhibit 51 are representative and not exhaustive.

201.    Defendant knew that the articles it marked and continues to mark with the '349 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT VIII

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHT PRODUCTS WITH THE '154 PATENT

202.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-201 of this Complaint.

203.    Defendant makes, sells, or has made and has sold, at least one product which it marks or causes to be marked with the '154 patent.

204.    This product includes, but is not limited to, the Lytecaster Recessed Downlighting series product number 1130CL.

205.    Images of the current specifications of this product (as verified through Defendant's Web site) are attached hereto as Exhibit 52 to this Complaint.

206.    The specification for this product was copyrighted in 2006, showing that this specification (and likely product) was created more than 5 years after the '154 patent expired. Ex. 6

207.    Defendant was aware that the '154 patent was expired when it designed and/or utilized this specification and product.

26

208.    The instance of false marking shown in Exhibit 52 is representative and not exhaustive.

209.    Defendant knew that the articles it marked and continues to mark with the '154 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT IX

## FALSE PATENT MARKING OF LIGHTING SYSTEMS PRODUCTS WITH THE '773 PATENT

210.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-209 of this Complaint.

211.    Defendant makes, sells, or has made and has sold, at least one product which it marks or causes to be marked with the '773 patent.

212.    This product includes, but is not limited to, the Lytetube Direct/Indirect Track 4-Light T8 Per 4-Foot Section product number RT6-10.

213.    Images of the current specification of this product (as verified through Defendant's Web site) are attached hereto as Exhibit 53 to this Complaint.

214.    The specification for this product was copyrighted in 2010 by "Philips Group," showing that this specification (and likely product) was created more than 4 years after the '773 patent expired.

215.    Defendant was aware that the '773 patent was expired when it designed and/or utilized this specification and product.

27

216.    The instance of false marking shown in Exhibit 53 is representative and not exhaustive.

217.    Defendant knew that the articles it marked and continues to mark with the '773 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT X

## FALSE PATENT MARKING OF LIGHTING SYSTEMS PRODUCTS WITH THE '993 PATENT

218.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-217 of this Complaint.

219.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '993 patent.

220.    Such products include, but are not limited to, Lighting System product numbers LSO-2, LSO-3, LSR-1, LSR-2, LS6-1, LS6-2, LS7-2, LV-1, LV-2, LV-3, LV-4, RT6-1, RT6-2, RT6-3, RT6-4, RT6-5, RT6-8, RT6-9 and RT6-11.

221.    Images of the current specifications of these products (as verified through Defendant' Web site) are attached hereto as Group Exhibit 54 to this Complaint.

222.    A number of these products specifications are dated after the '993 patent expired. For example, the RT6 series products are copyrighted between 2008-2010 by "Philips Group," showing that these products and specifications were created at least one year after the '993 patent expired.

28

223.    Defendant was aware that the '993 patent was expired when it designed and/or utilized those specifications and products.

224.    The instances of false marking shown in Group Exhibit 54 are representative and not exhaustive.

225.    Defendant knew that the articles it marked and continues to mark with the '993 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XI

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '985 PATENT

226.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-225 of this Complaint.

227.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '985 patent.

228.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting product numbers 602MR, 603MR, 604MR, 604SQMR, 1027, 1000LVNT, 1002LC, 1029, 1090, 1100FTUES, 1100FTUESEM, 1127, 1129, 1145, 1149, 1176, 1177SH, 1178SH, 1185, 2000AICV, 2000AIC, 2000IC, 2002P1, 2005, 2022, 2027 and 2090..

229.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 55 to this Complaint.

29

230.   While the '985 patent expired almost a year ago in March 2010, these products are still marked with the '985 patent (including, allowing the specifications to still be downloaded from defendant's Web sites).

231.   Defendant was aware that the '985 patent was expired, and yet marked expired patents on these specifications and products (at a minimum by allowing users to download falsely marked specifications).

232.   The instances of false marking shown in Group Exhibit 55 are representative and not exhaustive.

233.   Defendant knew that the articles it marked and continues to mark with the '985 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XII

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '084 PATENT

234.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-233 of this Complaint.

235.   Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '084 patent.

236.   Such products include, but are not limited to Lytecaster Recessed Downlighting product numbers 1102FH1R and 1102DH1R.

237.    Images of the current specifications of these products (as verified through Defendant' Web site) are attached hereto as Group Exhibit 56 to this Complaint.

238.    While the '084 patent expired over a year ago in January 2010, these products are still marked with the '084 patent (including, allowing the specifications to still be downloaded from defendant's Web sites).

239.    Defendant was aware that the '084 patent was expired, but still continued to mark these products with an expired patent (at a minimum by allowing users to download falsely marked specifications).

240.    The instances of false marking shown in Group Exhibit 56 are representative and not exhaustive.

241.    Defendant knew that the articles it marked and continues to mark with the '084 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XIII

## FALSE PATENT MARKING OF THE PERFORATED MESH SHIELD PRODUCTS WITH THE '254 PATENT

242.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-241 of this Complaint.

243.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '254 patent.

244.     Such products include, but are not limited to, the Perforated Mesh Shield product numbers MDCGWSVA2BX4BX and MDCG2BX.

245.     Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 57 to this Complaint.

246.     While the '254 patent expired in 2010, these products are still marked with the '254 patent (including, allowing the specifications to still be downloaded from defendant's Web sites).

247.     Defendant was aware that the '254 patent was expired but still continued to mark these products with an expired patent (at a minimum by allowing users to download falsely marked specifications).

248.     The instances of false marking shown in Group Exhibit 57 are representative and not exhaustive.

249.     Defendant knew that the articles it marked and continues to mark with the '254 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XIV

## FALSE PATENT MARKING OF LIGHTING PRODUCTS MARKED WITH THE '344 PATENT

250.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-249 of this Complaint.

251.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '344 patent.

252.    Such products include, but are not limited to, product numbers DPA2G12 Series, DPA2G12LS232, DPA2G16LS2FT (and 22U), DPA2G16LS26U, DPA2G18LP332, DPA2G18LS332, DPA2G24PP332, DPA2G32LS432, DPA2G9LS2FT (and 22U), DPA2G9LS217 (and 26U), DPA2G9LP317 (and 32U), DPA2G9LS2FT (and 22U), DPA2G9LP3FT, EDA2G18LR232, FRS2GFW2FT, FRS2GFW26U, FRS2GFW224 (and 324), G0S1G132 (and 232), G0S2G217 (and 2U), G0S2G232, GVS Series 2X2, GVS Series 2X4, IC Series, MDS2G36PS4FT, MDS2G36PS4U4 BX, MPA2G36LP3FT, MPA2G36LP32U (and 17), MPA2G36LS26U, MPA2G78LS332, MPA2G78LS432, MPA2G78PP332, OPS2GPW2FT, OPS2GPW214 (and 224), OPS2GPW217 (and 317), OPS2GPW228 (and 254), OPS2GPW232 (and 332), OPS2GPW232UNVC5 (and 332UNVC3), PRA2GRFVA2FT (and 3FT), PRA2GRFVA26U (and 217), PRA2GRFVA32U (and 17), PRA2GRFVA232, PRA2GRFVA332, PRA2GRFVA432, SKS1GPK, SKS2GPK2FT, SKS2GPK214 (and 224), SKS2GPK217 (and 317), SKS2GPK228 (and 254), SKS2GPK232 (and 332), SPS2GFSVA2FT (and 3FT), SPS2GFSVA26U (and 217), SPS2GFSVA32U (and 17), SPS2GFSVA232, SPS2GFSVA332, SPS2GFSVA432, STA 1'x4' 1 Lamp, STA 1'x4' 2 Lamp, SUS Series 432/632, VPA1G8LW132, VPA1G12LW132, VPA1G12PA132, VPA1G12PR132, VPA1G24PS232, VRA1G12LS132, VRA1G12LR232, VRA1G12LW232, VRA1G8LW232, VRA1G8LS232, WES Series 2X2, WES Series 2X4 and XTR2/XR2 Series 240/340/440.

253.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 58 to this Complaint.

254.   While the '344 patent expired in 2010, these products are still marked with the '344 patent (including, allowing the specifications to still be downloaded from defendant's Web sites).

255.   Defendant was aware that the '344 patent was expired but still continued to mark these products with an expired patent (at a minimum by allowing users to download falsely marked specifications).

256.   The instances of false marking shown in Group Exhibit 58 are representative and not exhaustive.

257.   Defendant knew that the articles it marked and continues to mark with the '344 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XV

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '624 AND '985 PATENTS

258.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-257 of this Complaint.

259.   Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '624 and '985 patents.

260.   Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1100AICM, 1134, 1143, 1170M1, 1171, 1179M1 and 1186

261.     Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 59 to this Complaint.

262.     While the '624 and '985 patents expired in December 2007 and March 2010 (respectively), these products are still marked with the '624 and '985 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  For at least three years then, defendant allowed users to download these specifications, despite the fact they were marked with expired patent numbers.

263.     Defendant was aware that the '624 and '985 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

264.     The instances of false marking shown in Group Exhibit 59 are representative and not exhaustive.

265.     Defendant knew that the articles it marked and continues to mark with the '624 and '985 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XVI

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '154 AND '985 PATENTS

266.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-265 of this Complaint.

267.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '154 and '985 patents.

268.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1100AICMFT, 1123, 1131, 1133, 1700P1 and MHM75.

269.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 60 to this Complaint.

270.    While the '154 and '985 patents expired in May 2000 and March 2010 (respectively), these products are still marked with the '154 and '985 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  In fact, the specifications for 1100AICMFT, 1123, 1131, 1133 and MHM75 (if not the products themselves) were all created after the '154 patent expired.

271.    Defendant was aware that the '154 and '985 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

272.    The instances of false marking shown in Group Exhibit 60 are representative and not exhaustive.

273.    Defendant knew that the articles it marked and continues to mark with the '154 and '985 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

**COUNT XVII**

36

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '154, '624 AND '985 PATENT

274.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-273 of this Complaint.

275.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '154, '624 and '985 patents.

276.     Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1100DICM and 1100DAICM.

277.     Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 61 to this Complaint.

278.     While the '154, '624 and '985 patents expired in May 2000, December 2007 and March 2010 (respectively), these products are still marked with the '154, '624 and '985 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  In fact, the specifications for these products (if not the products themselves) were all created after the '154 patent expired.

279.     Defendant was aware that the '154, '624 and '985 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

280.     The instances of false marking shown in Group Exhibit 61 are representative and not exhaustive.

281.     Defendant knew that the articles it marked and continues to mark with the '154, '624 and '985 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the

37

hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XVIII

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '822, '154 AND '403 PATENTS

282.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-281 of this Complaint.

283.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '822, '154 and '403 patents.

284.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1102F1, 1102LC and 1161-A.

285.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 62 to this Complaint.

286.    While the '822, '154 and '403 patents expired in May 1996, May 2000 and May 2000 (respectively), these products are still marked with the '822, '154 and '403 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  In fact, the 1102F1, 1102LC specifications (if not the products themselves) were all created after the '822, '154 and '403 patents expired.

287.    Defendant was aware that the '822, '154 and '403 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

288.    The instances of false marking shown in Group Exhibit 62 are representative and not exhaustive.

38

289.    Defendant knew that the articles it marked and continues to mark with the '822, '154 and '403 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XIX

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '154, '403 AND '985 PATENTS

290.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-289 of this Complaint.

291.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '154, '403 and '985 patents.

292.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1100FTU, 1102D1LC, 1102DM1, 1102F1LC, 1122, 1152, 1161 and 1182.

293.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 63 to this Complaint.

294.    While the '154, '403 and '985 patents expired in May 2000, May 2000 and March 2010 (respectively), these products are still marked with the '154, '403 and '985 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  In fact, the above-identified product specifications (if not the products themselves) were all created after the '154 and '403 patents expired.

295.    Defendant was aware that the '154, '403 and '985 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

296.    The instances of false marking shown in Group Exhibit 63 are representative and not exhaustive.

297.    Defendant knew that the articles it marked and continues to mark with the '154, '403 and '985 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XX

## FALSE PATENT MARKING OF LYTECASTER RECESSED DOWNLIGHTING PRODUCTS WITH THE '154 AND '403 PATENTS

298.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-297 of this Complaint.

299.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '154 and '403 patents.

300.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product numbers 1102D1, 1105T, 1113T, 1126T, 1128T, 1135T and 1178T.

301.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 64 to this Complaint.

302.    While the '154 and '403 patents both expired in May 2000, these products are still marked with the '154 and '403 patents (including, allowing the specifications to still be

40

downloaded from defendant's Web sites).  In fact, the specifications for product numbers 1105T, 1113T, 1126T, 1128T, 1135T and 1178T (if not the products themselves) were all created after the '154 and '403 patents expired.

303.    Defendant was aware that the '154 and '403 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

304.    The instances of false marking shown in Group Exhibit 64 are representative and not exhaustive.

305.    Defendant knew that the articles it marked and continues to mark with the '154 and '403 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXI

## FALSE PATENT MARKING OF PRODUCTS WITH THE '403 AND '985 PATENTS

306.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-305 of this Complaint.

307.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '403 and '985 patents.

308.    Such products include, but are not limited to, product numbers 4733, 4734, 4735, 1102P1 and 1102T.

309.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 65 to this Complaint.

41

310.    While the '403 and '985 patents expired in May 2000 and March 2010 (respectively), these products are still marked with the '403 and '985 patents (including, allowing the specifications to still be downloaded from defendant's Web sites).  In fact, all of the above-identified specifications (if not the products themselves) were all created after the '403 and '985 patents expired.

311.    Defendant was aware that the '403 and '985 patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

312.    The instances of false marking shown in Group Exhibit 65 are representative and not exhaustive.

313.    Defendant knew that the articles it marked and continues to mark with the '403 and '985 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

**COUNT XXII**

**FALSE PATENT MARKING OF PRODUCTS WITH THE '154, '403, '624 AND '985 PATENTS**

314.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-313 of this Complaint.

315.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '154, '403, '624 and '985 patents.

316.    Such products include, but are not limited to, the Lytecaster Recessed Downlighting series product number 1132.

317.    Images of the current specification of this product (as verified through Defendant's Web site) is attached hereto as Exhibit 66 to this Complaint.

318.    The specifications for this product was copyrighted in 2009 by "Philips Group," showing that this specification (if not product also) was created after the '154, '403 and '624 patents expired.

319.    Defendant was aware that the '154, '403 and '624 patents were expired when it designed and/or utilized those specifications and products.

320.    The instances of false marking shown in Exhibit 66 are representative and not exhaustive.

321.    Defendant knew that the articles it marked and continues to mark with the '154, '403 and '624 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXIII

## FALSE PATENT MARKING OF LYTESPAN TRACK LIGHTING PRODUCTS WITH '518 PATENT

322.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-321 of this Complaint.

323.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '518 patent.

43

324.    Such products include, but are not limited to, the Lytespan Track Lighting series product numbers 6250, 6253, 6268, 6278WH, 6280, 6282, 6284, 6294, 6295, 6296, 6297, 6298, 6350, 6351, 6353, 6355, 6357, 6410, 6411, 6415, 6497, 7155, 7178, 7179, 7190, 7191, 7194, 7196, 7441, 7442, 7529, 7531, 7589, 7630, 7641WH, 7644, 8171WH, 8170WH, 8170BK and 8172WH.

325.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 67 to this Complaint.

326.    The specifications for these products were copyrighted between 2002-2008, showing that these specifications (and likely products) were created at least more than 10 years after the '518 patent expired.

327.    Defendant was aware that the '518 patent was expired when it designed and/or utilized those specifications and products.

328.    The instances of false marking shown in Group Exhibit 67 are representative and not exhaustive.

329.    Defendant knew that the articles it marked and continues to mark with the '518 patent are not covered by the expired patent marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

330.    Additionally, given that the '518 patent expired over 10 years ago, defendant could not have had a reasonable belief in marking products with the '518 patent, especially when a number (if not all) of the marked products were created after the '518 patent expired.

44

<u>**COUNT XXIV**</u>

<u>**FALSE PATENT MARKING OF PRODUCTS WITH THE '211, '576, '956, '323, '138, '731, '893, '950, '840, '709, '654, '259, '858 AND '124 PATENTS**</u>

331.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-330 of this Complaint.

332.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '211, '576, '956, '323, '138, '731, '893, '950, '840, '709, '654, '259, '858 and '124 patents.

333.    Such products include, but are not limited to, the Lytemode Quad Filter Option LM-QFO Quad Inductive Filter, Onset Remote, Momentum Preset Remote and product numbers MP600VA, MP1000VA, MP1500VA, MP2000VA, MP525QE/MP625QE and ZP260QE/ZP425QW.

334.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibit 68 to this Complaint.

335.    While these patents are all expired (some as early as 2001), defendant still marks its products with these patents (including, allowing the specifications to still be downloaded from defendant's Web sites).

336.    Defendant was aware that these patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

337.    The instances of false marking shown in Group Exhibit 68 are representative and not exhaustive.

338.     Defendant knew that the articles it marked and continues to mark with the '211, '576, '956, '323, '138, '731, '893, '950, '840, '709, '654, '259, '858 and '124 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXV

## FALSE PATENT MARKING OF PRODUCTS WITH THE '211, '576, '956, '138, '731, '950, '840, '709, '654, '259, '124, '578 AND '844 PATENTS

339.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-338 of this Complaint.

340.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '211, '576, '956, '138, '731, '950, '840, '709, '654, '259, '124, '578 and '844 patents.

341.     Such products include, but are not limited to, the Astral Preset Whispurr Fan Control, Intellisight, Lightmode DMX, and MultiSet Pro.

342.     Images of the current specification and/or brochures of these products (as verified through Defendant's Web site) are attached hereto as Exhibits 5-7 and 69 to this Complaint.

343.     While these patents are all expired (some as early as 2001), defendant still marks its products with these patents (including, allowing the specifications to still be downloaded from defendant's Web sites).

344.     Defendant was aware that these patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

46

345.    The instances of false marking shown in Exhibits 5-7 and 69 are representative and not exhaustive.

346.    Defendant knew that the articles it marked and continues to mark with the '211, '576, '956, '138, '731, '950, '840, '709, '654, '259, '124 and '844 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXVI

## FALSE PATENT MARKING OF PRODUCTS WITH THE '211, '576, '956, '323, '731, '893, '950, '840, '709, '654, '259 AND '124 PATENTS

347.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-346 of this Complaint.

348.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '211, '576, '956, '323, '731, '893, '950, '840, '709, '654, '259 and '124 patents.

349.    Such products include, but are not limited to, the Onset Remote, P/N 85-0619A.

350.    Images of the current specifications of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 70 to this Complaint.

351.    While these patents are all expired (some as early as 2001), defendant still marks its products with these patents (including, allowing the specifications to still be downloaded from defendant's Web sites).

47

352.     Defendant was aware that these patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked specifications).

353.     The instances of false marking shown in Exhibit 70 are representative and not exhaustive.

354.     Defendant knew that the articles it marked and continues to mark with the '211, '576, '956, '323, '731, '893, '950, '840, '709, '654, '259 and '124 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXVII

## FALSE PATENT MARKING OF INELLISIGHT PRODUCTS PATENTS

355.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-354 of this Complaint.

356.     Defendant makes, sells, or has made and has sold, a series of products that it markets under the "Intellisight" brand.

357.     This brand includes, but is not limited to, the ITS2U, ITSHDFU, ITSEBU, ITSDU, ITSRB, ITSCS, ITSCSHB, ITSPCS, ITSRP1U, ITSRP2U, ITSRP4U, ITSRPHDF2U, ITSRPHDF4U, ITSRPFAM2U, ITSRPFAM4U, ITSMS and ITSIR1.

358.     Images of the product brochure and current specifications of these products (as verified through Defendant's Web site) are attached hereto as Group Exhibits 5 and 71 to this Complaint.

359.    The brochure for these products as well as the specifications are marked with the '211, '576, '956, '138, '731, '950, '840, '709, '969, '654, '259, '578, '124 and'969 patents.

360.    While these patents are all expired (some as early as 2001), defendant still marks its products with these patents (including, allowing the specifications to still be downloaded from defendant's Web sites).

361.    All but one of the brochure and specifications (and likely products) were created during or after 2008, and thus, the '211 patent, the '576 patent, the '956 patent, the '138 patent, the '731 patent, the '950, and the '578 patent and the '124 patent expired prior to the creation of these materials.

362.    Defendant was aware that these patents were expired but still continued to mark these products with expired patents (at a minimum by allowing users to download falsely marked brochures and specifications).

363.    The instances of false marking shown in Group Exhibits 5 and 71 are representative and not exhaustive.

364.    As discussed in Paragraphs 44-49 above, defendant marked these materials with an express warning that if anyone violated any of the patents (including expired patents) marked on the brochure or specifications, that defendant would bring suit against them.

365.    The sole reason for such a warning is to deceive others into believing those expired patents were in fact not expired.

366.    Defendant knew that the articles it marked and continues to mark with the '211, '576, '956, '138, '731, '950, '840, '709, '969, '654, '259, '578, '124 and'969 patents are not covered by the expired patents marked thereon because expired patents have no monopoly rights,

yet defendant still intentionally marks the products with the hopes of preventing others from

making products that fall within the scope of the falsely marked patent(s) on its products.

## COUNT XXVII

## FALSE PATENT MARKING OF ADDITIONAL PRODUCTS WITH AT LEAST THREE OF THE FOLLOWING EXPIRED PATENTS:  THE '211, '576, '956, '323, '138, '731, '893, '950, '840, '709, '654, '259, '858, '578, '124, '844, '969, '203 AND '207 PATENTS

367.     Relator realleges and incorporates herein by reference the allegations stated in

paragraphs 1-366 of this Complaint.

368.     The extent of defendants' false marking is so rampant, that at least an additional

100 products are falsely marked with expired patent numbers.[3]

369.     Examples[4] of such products included, but are not limited to, CL-4-5, CL-8-5, CL-

12-5, CL-16-5, CL-45II, CL-85II, CL-125II, CL-165II, CL-45IIES, CL-4585IIES, CL-125IIES,

CL-165IIES, CLB-8, CLB-16, CS-2045II, ITSRP1PU, ITISR2, ITISR1, ITSMS, ITSPCS,

MHPWDC20, OSPS-SYS120, PowerSpec HDF Ballasts products, CS-2045, ILSKS, Lytemode

Designer Suite Touchscreen Station, ILS-CL-BTS-II, LyteScene II Touchscreen Master Stations,

Onset Electronic Dimmable Fluorescent Ballast Dimmer, Multiset Pro Electronic Dimmable

Fluorescent Ballast Dimmer, ITSEBAU, OPT44000HDF7, OPT42000HDF/OPT42000HDF15,

OPT42000FAM/OPT42000FAM15, OPT44000FAM7, OPT22400FAM/OPT22400FAM15,

---

[3] It is plaintiff's intention to exhaustively identify each of the products that defendant has falsely marked within this complaint either within the text of the complaint, or through an attachment (e.g., a product brochure or specification that lists the product numbers, identifies the product line, etc.).  However, due to the large number of defendant's violations, it is possible some have not been located as of yet.  This final count serves as a catch-all to include a number of products that are not easily organized into a single category, and to also be a catch-all for any additional products that plaintiff will learn of during discovery.

[4] In the interest of brevity, rather than attach each brochure, specification, document, etc., for each product listed in this count, plaintiff will just identify each product.  Plaintiff is in possession of documents referencing all such products (as downloaded from defendant's Web sites identified above) and will file them with the Court, if so requested.

Sunrise Whispurr Fan Control, Classic Digital Control Station, PLSP, A600, A600LV, AP600, AP603, AP1000, AP1003, AP600LV, AP603LV, AP300QE, AP303QE, AWHIS, BKEY, CE6BES, CE8BES, CLMIRTES, Remote Lock Out Key Switch-MS-KS, BCCII Digital Control Center, Brilliance II-BRCOMM Communication Interface Card, CL-TECCO, BRTLCK, Brilliance II BRMSM Interface Card, Brilliance II-BRRLY Interface Card, Brilliance II-BRSYS Interface Card, Brilliance II Control Stations, Brilliance II Time Clock Remote Control Station, CL-TCCO-BR, Capio Plus CPFM, Compose PLC-CPLCOMM Communication Interface Card, Compose PLC Firewall, Compose PLC Dimming System, Compose PLC Firewall Enclosure, Compose PLC-CPLCRLY Relay Interface Card, Compose PLC Inline Filter, DA10HDFI, DA20HDF-120I/DA20HDF-277I, DA-2-2000VA/DA-2400VA, DA210QE-120/DA110QE-120, DA110ESI120I/DA210ESI120I, DA22000VAH/DA2400VAH, DA2400EBI/DA22000EBI, DA2400EBH/DA22000EBH, CLM-IRC, CLM-IRW, CL-SPS, Compli Lytemode Radio Frequency Transmitter/Receiver, LM-ERO Automatic Transfer Switch, LM-ERO Emergency Relay Option, LM-2-3000BA, LM-2-4000FAM, LM-2-4000HDF, LM-4-1200, LM110ESI120I, LM110QE120I, LM210EFI120I, LM210QE120I, LM-RO-FAM-277, LMDP-2-2000VA/LMDP-2-2400ND/LMDP-2400VA, LMDP-20HDF-120/LMDP-20HDF-277, ILS-CL-WCU, Momentum Preset Inductive and Electronic Low Voltage Dimmer, Momentum Preset Fluorescent Electronic Dimmer, MP1500ED, MP1500HDF120, Multiset-Master/Dimmer, Multiset/Multiset Pro-M4C-M4CR, Multiset/Multiset Pro-MSCR/MHCR, Multiset-Preset Dimming System, MHPWDC20, MRM-1R, MRM-2R, MRM-T2R, CL-TCCO-MS, CL-TCCO-MR, RS232/RS485 Interface-MS232, Multiset/Multiset Pro/Onset Whispurr Fan Control, MS232 Demo Disk, Onset Microtouch Digital Dimmer, Onset High Wattage HDF/GLT Fluorescent Electronic Dimmer, Momentum Preset Incandescent Dimmer,

OS300ESI/OH500ESI, OS600EB/OS1000EB/OH1500EB, RS232/RS485, Interface CL232, ZP600EB/ZP1000EB, ZP600HDF120, ZP260ESI/ZP425ESI/MP525ESI/MP625ESI, Topaz Series-1000W Toggle Dimmer Single-Pull 3-Way, 120VAC60HZ, Vega Heatsink Low Voltage and Non-Dim Slider Dimmers, Vega Heatsink Fluorescent Slider Dimmers, Vega Heatsink Incandescent and Two-WireLow Voltage Slider Dimmers, WDC-WHIS, BCC II, Brilliance II Control Stations Ellipse Series, BKey, CPLCILF20, ILSCP48 48 Module Rack, ILSCP24 24 Module Rack, Capio Plus Dimmer Rack Options, Capio Plus Rack Control Module, Capio Plus Dimmer Modules, Compli Scenist II Remote, Compose PLC, DA110QE120H, InSight Low Voltage Ceiling Sensor Model OSC, InSight Power Pack-OSPS-10A, Insight Power Pack-OSPS-20A-120, Insight Power Pack-OSPS-20A-277, Insight Low Voltage Sensor Switch Model OSW, Insight Three Wire Inductive Sensing Dimmer, Insight Three Wire Universal Sensor Switch, Insight Two Wire Incandescent Sensing Dimmer, Insight Two Wire Incandescent Sensing Switch, Insight Two Wire Universal Sensing Switch, Insight Systems Power Pack, Momentum Preset EB Fluorescent Electronic Dimmer, MultiSet Pro Channel Remote, MultiSet Pro-MS232 Interface, MultiSet Pro Electronic Low Voltage Dimmer, MultiSet Pro Electronic Dimmable Flurscent Ballast EB Dimmer, MultiSet Pro High Wattage Electronic Dimmable Fluorescent Ballast EB Dimmer, MultiSet Pro High Wattage Universal Dimmer, MultiSet Pro High Wattage Electronic Universal Switch, MultiSet Pro Low Wattage HDF Fluorescent Electronic Dimmer, MultiSet Pro High Wattage Electronic Low Voltage Dimmer, MultiSet Pro Low Wattage Universal Dimmer, MultiSet Pro Master Control Station-Classic Series, MultiSet Pro Master and AV Interface Control Station Ellipse Series, MultiSet Pro Master Control Station Ellipse Series, MultiSet Pro Master Remote Station, MultiSet Pro/Onset Whispurr Fan Control, Onset High-Wattage Electronic Dimmable Fluorescent Ballast EB Dimmer, Onset Electronic Dimmable

52

Fluorescent Ballast EB Dimmer, Onset Low Wattage HDF Fluorescent Electronic Dimmer,

Onset High Wattage Electronic Low Voltage Dimmer, Onset Master and Master Remote, Onset

Channel Remote, Onset High Wattage Inductive Dimmer, Onset High Wattage Incandescent

Dimmer, Onset Electronic Universal Switch, Onset Low Wattage Inductive Dimmer, Onset Low

Wattage Incandescent Dimmer, PowerSpec HDF High Performance Fluorescent Dimming

Ballasts, PowerSpec HDF Ballasts, Rockslide Preset Inductive Dimmer, Rockslide Preset

Incandescent Dimmer, Sunrise Preset Electronic Dimmable Fluorescent Ballast EB Dimmer,

Sunrise Preset Fluorescent Electronic Dimmer, Sunrise Preset Electronic Dimmable Fluorescent

Ballast FAM Dimmer, Sunrise Preset Inductive and Electronic Low Voltage Dimmer, Sunrise

Preset Incandescent Dimmer, Vega Universal Heatsink Electronic Non-Dim Switch, Vega

Universal Heatsink Slide Dimmer, Vega Heatsink Slide Dimmer, Lytemode High Inductance

Filter Option-LM-HIFO Dual Inductive Filter, MP1500FAM120, Sunrise Preset, ILS-CL-45ES,

ILS-CL-85ES, ILS-CL-125ES, ILS-CL-165ES, ILS-CL-2RES, ILS-CL-6RES, LM-QFO, ILS-

LM-1616, ILS-LM3232, ILS-LM-4040, ILS-LM-4080, ILS-LM-80-277, ILS-LM-8080, ILS-

CL-8RSPS, ILSCLWCU, ILS-CLB-8, ILCS-CLB-16, LyteScene Touch Screen Master Stations,

Lytemode Dual High-Inductance Filter Option, Lytemode – 16 Channel Mini-Master Station,

CLM-WRCO-5/CLM-WRCO-13, Compli Scenist/Compli Lytemode – CL232 Interface,

Lytemode – Compli Rough-In Backboxes, ILSCP24, ILSCP48, CLMIR, CP20HP,[5] CP15HP,

CP50, CP20HDF, CP15HDF, CP20ND, CP15ND, CP20CC, CP15CC, CPRCM, ILSLMPSC,

CPBLANK, the Color FX series, CS-2045II, Compose PLC, DA10HDFH, DA10HDFI,

DA110QE120I/DA220QE120I, DA20HDF-120I/DA20HDF-277I, DA20HDF120H,

---

[5] The Capio Plus series (ILSCP24, ILSCP48, CP20HP, CP15HP, CP50, CP20HDF, CP15HDF, CP20ND, CP15ND, CP20CC, CP15CC, CPRCM, ILSLMPSC, CPBLANK) additionally utilizes the "aggressively defend" language in its 2006 product brochure.  Ex. 72.

53

DA20HDF277H, DA22000VAH, DA22000VAI/DA2400VAI, DA2400EBI, DA2400EB277I/DA22000EB277I, DA2400VAH, LB-SM, LB-LG, ILS-CL-2RES, ISL-CL-6RES, ILS-CL-8RES, Classic Digital Keypads, LMDS, LDTSO7, LDTSO7RM, ILSDMX45ES, ILSDMX85ES, ILSDMX125ES, ILSDMX165ES, Lytemode Input Modules, Lytemode Network Powered Hubs, LM-RO-277, LM-RO-FAM-277, LM-110-QE-1201, LM-2-2000, LM-2-2000EB, LM-2-2000-32, LM-2-3000-EB, LM-2400, LM-2-4000FAM, LM-2-2400FAM, LM-2-2400HDF, LM-2-2400ND, LM-2-3000VA, LM-4-1200, ILSLMHUB, LM-2-4000-ND, ILS-CL-6MMES, ILS-CL-BTS, ILS-LM-PS, ILS-CL-8RSPS, ILS-CL-232, ILS-CL-TCCO, ILS-CL-TSII, ILS-CL-TSIIRM, ILS-CL-TSRM, ILS-CL-TCTSRM, ILS-CL-TS, ILS-CL-TCTS, Multiset Pro High Wattage HDF Fluorescent Electronic Dimmer, Multset Pro-MDC20,MultiSet Pro Prewired Dimming Cabinet MDC20, MultiSet Pro-Three Wired Dimming Cabinet-MHPWC20, MultiSet Pro-MHBWC20, MultiSet/MultiSet-Pro MS-232, RS232/RS484 Interface, MultiSet/MultiSet Pro/Onset Whispurr Fan Control, MultiSet Pro-Prewired Dimming Cabinet-MDC56, Onset Microtouch Digital Dimmer, Optio Advance Mark 10 Dimmer Modules, OPT3120, OPT6120, OPT9120, OPT3277, OPT6277, OPT9277, OPT22000F-Dual 2000 VA 3 Wire fluorescent Dimmer Module, OPT22000F15-Dual 1800 VA Three Wire Fluorescent Dimmer Module, OPT24000F7-Dual 4000VA Three Wire Fluorescent Dimmer Module, Optio 0-10 Volt Fluorescent Dimmer Modules, Optio Lighting Control Panels, Optio PowerSpec HDF Dimmer Modules, Optio IGBT Dimmer Modules, Optio SCR Inductive Dimmer Modules, Optio Relay Modules, Phase Loss Sense Panel, Sunrise Whispurr Fan Control (ZWHIS) and Vega Heatsink Fluorescent Slider Dimmers.

370.     Defendant was aware that the patents marked on these products were expired, when they designed and utilized these specifications, or at least, when they posted them on their Web site, allowing users to download them.

371.     The instances identified above are representative and not exhaustive.

372.     Defendant knew that the articles it marked and continues to mark with these expired patents are not covered by the patents marked thereon because expired patents have no monopoly rights, yet defendant still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its products.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays that this Court enter judgment in their favor and against Defendant as follows:

A. Entering an injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from further violating 35 U.S.C. § 292.

B. Order Defendant to pay a civil monetary fine of $500 per false marking offense, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States;

C. Order Defendant to provide an accounting for any falsely marked products not presented at trial and a monetary award set by the Court for such falsely marked articles;

D. Order Defendant to pay all costs of this action, including attorneys' fees and all available interest; and

E. Grant Relator any such other and further relief as the Court may deem just and equitable.

Respectfully submitted,
PLAINTIFF FRANK'S ELECTRICAL SERVICE

By its attorneys,
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD

Dated:  February 23, 2011          By: */s/ Paul A. Lesko*
Paul A. Lesko, IL Bar No. 6288806
Jo Anna Pollock, IL Bar No. 6273491
1 Court Street
Alton, Illinois 62002
(618) 259-2222
(618) 259-2251 – facsimile
plesko@simmonsfirm.com
jpollock@simmonsfirm.com

56